The next case call for oral argument is in the interest of J.H. and in the interest of S.H. Counsel? Did we switch on you or how did that work? Good morning. My name is Joel Curry. I represent the mother in this case. This case involves termination of criminal rights of the mother originating out of Randolph County. Regarding the two children that she had, S.R.H. and J.H. The mother was found to be unfit for criminal rights terminated by the Randolph County Circuit Court to avoid a shooter for sure by an order entered May 12, 2009. This appeal by the mother involves only the finding of unfitness on that case, not the termination of criminal rights after the best interest hearing. The background of this case, on April 11, 2007, the mother, S.H. admitted to a petition for adjudication of wardship. The legend her daughter, S.R.H. was sexually abused by the mother's boyfriend. Was that the sole allegation in the juvenile petition? There was an allegation in there of a previous 2003-2004 case that was dismissed, which I'm not sure why it was even in there. But she admitted to the allegation that... From my understanding of the record, she admitted to the allegation. Okay. Go ahead. She had been through a couple of different lawyers. I think this was her second or third lawyer when she did this. Based on the record, she admitted. The disposition on this case was held on July 9, 2007, and the judge assured granted guardianship to DCFS. The court, at the dispositional hearing, had the following exchange with the DCFS caseworker. The court, I got one question. If she never acknowledges that there was abuse of this child, she's never going to complete her service plan, correct? Because that's the first goal, correct? Caseworker Gentry answered, correct. The court failure to acknowledge abuse, caseworker Gentry, it's hard to work on. We have no acknowledgement. The court then asked or stated, well, I mean, she's going to fail. She's never going to complete the service plan. That's the first, first goal, isn't it? Gentry replied, is to acknowledge. The court acknowledged, and you attacked the problem after that, caseworker Gentry, right? The court okayed. And to this day, back to March of this year, there's been no acknowledgement at all of anything happening. Caseworker Gentry, right. Well, she admitted to the petition. I understand that. So apparently, at least as of the disposition, the court was under the impression that she was still denied. And as we'll see throughout the record on this, that her denial is continually maintained or talked about throughout the entire record, throughout the permanency reviews and the service plan evaluation. Also, at this dispositional hearing, rather strangely, the court declined at this time to set a permanency goal. Then the court ordered the mother to comply with the terms of the service plan or risk terminating her parental rights. The service plan, the first service plan evaluation was done on September 19th of 07. It found the mother was making satisfactory progress in counseling, obtaining a psychological evaluation, and obtaining a domestic violence assessment. In fact, the domestic violence assessment had been completed. But rated her as unsatisfactory, and this service plan evaluation is done by the caseworker, rated her as unsatisfactory due to the mother's denial of domestic violence. The evaluation also found, as all these evaluations will, that the mother was visiting on a regular basis. Then on January 2nd of 2008, the court conducted a permanency review hearing, found that the mother was visiting and involving counseling on a regular basis, and completed the psychological evaluation and domestic violence assessment. However, the mother was not making satisfactory progress due to her refusal to acknowledge the abuse occurred to her daughter. We move on to the next hearing. Is it an allegation that she was present when the abuse occurred, that she saw the abuse and didn't do anything? It's rather vague. It's saying that she created an environment of jury. And the court moves on later on to say that this happened while the child was in the mother's care, in the mother's house, under the mother's supervision. So the allegation is rather vague. It doesn't say she allowed it to happen, it doesn't say she acknowledged it was going on and did nothing. It just says that she allowed contact with this paramour, this boyfriend, Mr. Martine. The next service provided an evaluation on July 3rd. Once again, found the mother completed the psychological and attended all counseling sessions. In fact, had 100% attendance. Was visiting the children regularly, but rated unsatisfactory due to failure to acknowledge abuse. Permanency review hearing held on July 14th, 2008. At this time, the court changed the permanency goal to substitute care pending court determination of criminal rights. What exactly was she supposed to admit, according to these reports? What was she supposed to have done? Admit. Apparently, she was supposed to admit that the sexual abuse occurred to her daughter. And I'll get to that when we get into the Fifth Amendment situation. This permanency review changed the goal to court determination of criminal rights. However, no termination motion petition was filed at this time. The court noted that the mother continues to deny abuse occurred to the minor while at the minor's home and under her supervision. The next service plan evaluation, October 7th, 2008, says the mother is doing everything, but rated as unsatisfactory due to her failure to acknowledge sexual abuse. The next permanency review on February 2nd. Once again, the mother continues to engage in services, but unsatisfactory due to her failure to acknowledge sexual abuse of the daughter. At this point in time, the motion to terminate criminal rights was filed on February 2nd of 2009. The trial was held on April 6th of 2009. The court found the mother unfit on all four allegations that were contained in the petition. Basically, failure to maintain a reasonable degree of interest, concern, and responsibility. Failure to make reasonable efforts to correct the conditions for the basis of removal of the minors. Failure to make reasonable progress for the return of the minors within the nine months after adjudication. Within the initial nine months, actually. And failure to make reasonable progress for the return of the minors during any nine-month period following the initial nine-month period. Pretty much the standard allegations you find in DCFS-specific petitions. The court, in ruling from the bench on a fitness, found that the mother, in fact stated the mother can jump through hoops. The mother can do everything on her service plan. But she doesn't get to first base until she acknowledges her daughter was abused in 2007. The court followed that up with a written order on May 12th, 2009, after a best-of-the-best interest hearing, terminating mother's parental rights, and found that the mother will never make satisfactory progress due to consistently denying that her daughter was the victim of abuse. So I think the threshold question here then becomes, do we have a Fifth Amendment situation similar to the Supreme Court case of A.W. and the case that this court considered last year in Ray P.M.C.? Did the mother ever assert her Fifth Amendment right in the trial court? No, she did not. And as I noted in my brief, I think it's Minnesota v. Murphy, and as this court noted in P.M.C., even though that's not brought up at the trial level, it is not waived. Isn't there a distinction between this case and N. Ray P.M.C. and N. Ray A.W. in that in each of those cases the respondent whose parental rights was terminated was the alleged sex offender? Yes, it was. And, of course, in both of those cases the Fifth Amendment was found not to apply. And in those cases it was the alleged sex offender, whereas here she's being asked to admit that her boyfriend committed a sexual crime. Which I think is tantamount to her involving her Fifth Amendment rights because she's being asked to say that I knew about it and did nothing, or that I was aware it might happen and did nothing, which leaves her open to criminal charges of child endangerment, and thus that fits her into the Fifth Amendment situation, I think. That's what they're asking her to do. Did the state ever offer her immunity? No. As this court pointed out at P.M.C., that's one of the options they had was to offer immunity and did not. Was she, were they wanting her to admit that her daughter had been abused or were they requiring her to admit that she was in any way responsible for it? You know, the status versus the action. The question I made in the record was that they were asking her to admit that her daughter was sexually abused. The status of having been sexually abused. How does that implicate a Fifth Amendment right? Because, as the court points out throughout here, they're saying this happened in her house under her supervision. I think that gets into a situation where she could be possibly charged with child endangerment. If she's not required to admit any participation or knowledge, but she's required to admit the present status of the daughter as having been a victim of abuse, how does that implicate any Fifth Amendment right? It might not, and that's where, under P.M.C., we get into the situation, if this is not a Fifth Amendment situation, we get into the situation of medical therapy, as this court pointed out in RAE P.M.C. If the Fifth Amendment does not apply here, this court, citing NRAAW, said, however, there is a fine but important distinction between terminating criminal rights based specifically upon a parent's refusal to admit, that's which he denies, thereby forcing him to waive the Fifth Amendment privilege against self-incrimination and terminating criminal rights based upon a parent's failure to comply with an order to undergo meaningful therapy or rehabilitation because a parent's refusal to admit sexual abuse inhibits meaningful therapy. The latter is constitutionally permissible while the former is not. So you're basically, so your argument, if, and, If the Fifth Amendment doesn't apply, if the Fifth Amendment doesn't apply, we still have a situation where there was no order requiring her to engage in meaningful therapy. And you're basically saying that the order was unclear as to the status or the action, is that correct? The order was unclear as to what? It didn't really say she, we understand you deny this, but we want you to go out and get meaningful therapy, as cited in NRAAW and P.M.C., or DCFS, you provide her with meaningful therapy. DCFS didn't even provide her with counseling. She had to go out and get her own, as you'll see in the record. At the disposition date, she didn't have a counselor. She went out and found her own licensed counselor. Now, the court never ordered her similar to what should have been done. A trial court may order a service plan that requires a parent to engage in effective counseling or therapy. This was never ordered. It was just complete the service plan. She did. She completed everything on the service plan. Isn't the underlying problem here that she would not admit that Mr. Marteen was a danger to her children, and Mr. Marteen continued to be a presence off and on in her life? I mean, isn't that what they would say? Before the children? She wouldn't admit that he abused her child. It appears she would not admit that the child was sexually abused. And she would not admit that he physically abused the child in an earlier incident, right? Right, but that one was dismissed for whatever reason. Now, once the children were removed, it appears that she may have went back with Mr. Marteen for a brief basis. Well, this case was pending, right? Well, after the children were removed, but before the termination. Right. The children were not with her at that time. The basis of this case is that she would not admit this child was sexually abused, bottom line. And the question is, after she does everything on her service plan, which she did, she did the counseling, she did the domestic violence assessment, she visited, she drove 100 miles round trip from wherever she lived at in Boulderville, I think, up to Carlisle to visit the child at the field office, was 100% attendance on her visitation, was 100% attendance on her counseling, did the domestic violence assessment, said that there was no domestic violence involving her or Marteen, and thus the domestic violence counselor said, there's no more I can do for you, went to the counseling, she did everything on her service plan, except she did not admit the child was sexually abused. And I guess that's the bottom line question here. And this isn't a questionable issue of sex abuse, really, is it? I mean, this child was taken to the hospital, had surgery. The record is devoid of any medical records. It's devoid of any proof at the termination trial of the exact injuries of this child. It's devoid of all those issues. Also, the record is... And I guess that's because she admitted it. There wasn't any reason to have to present evidence because she admitted the initial petition. Actually, the record is unclear at the admission stage of what the actual injuries that I saw were to this child. Apparently, someone had the records because there's some reference, but the exact extent of her injuries is unclear. The state had time. They had a psychological evaluation, I think done by Dr. Kluge. We never heard from Dr. Kluge during the fitness aspect of this trial. Who could have testified regarding meaningful therapy, but was available if it was possible. The mother was going to a counselor for two years. It could have been called to testify regarding meaningful therapy. If it was possible, it was available. I realize there's some mention at PMC and AW about the burden being on the respondent to come in and say that her counseling was meaningful, but I think the state has the burden of proving by clear and convincing evidence in this case that the mother is unfit. And I don't think they have done this in this case. They have showed that she did everything on the service plan. They have demonstrated all of that. It was the subjective viewpoint of the caseworker, and from the start, the judge in this case, that this mother would never, ever get these children back, satisfactorily complete a service plan without the admission of the sexual abuse. And based on that, I don't think you can terminate a mother's rights in a case like this, where she has done everything. There was never an order for her to get meaningful therapy, as outlined in PMC. If the Fifth Amendment doesn't apply, then in the minimum, that has to be the order. Now, maybe there is meaningful therapy that could be given to her. I don't know. And of course, this court in PMC and the Supreme Court in AW said they didn't know because they're not going to take judicial notice of whether or not this could be done or not. I want to find out what distinction you're making here. She was ordered to get counseling, right? Right. And are you saying that because the judge didn't put the word meaningful in that order? I mean, isn't it presumed that she's supposed to meaningfully participate in the counseling that's ordered? I don't understand what the distinction is. She participated in the counseling. Okay. And participated on a regular basis. And those involved said she couldn't really complete it meaningfully because she would not admit the abuse, right? The domestic violence counselor said there's nothing more I can do for her unless she admits there was domestic violence between her and her boyfriend. The counselor, she continued to go to the counselor on issues, but the question here, as in PMC and AW, is is there some therapy that she can do without admission that can be meaningful to help her? And that has to be proven by the state in this case by clearing and convincing evidence. That presumes that her Fifth Amendment rights are being violated. We're not violating them. We're not violating them. Right. If we go past the Fifth Amendment situation and say that doesn't apply here as was found in PMC and AW, then you get to the situation as outlined in these cases. Can the, is there some sort of meaningful therapy that could be a rehabilitation that can be given to the parent and why did they refuse it? And in this case, I don't know. But, however, the mother has done everything in this case she was required to do absent admit that which she denied. And I would ask that this Court reverse the finding of the Randolph County Circuit. Thank you. Thank you, Counsel. Counsel? Your Honors, the record replete with references to the injuries that the child had sustained on both occasions in 2003 and in 2007. And you're correct, the mother did admit to that petition. The first incident. Do you think if you admit to the petition, you waive your right to use PMC to say you can't compel me to admit to a crime? Your Honor? She admitted to the injuries and what was charged in the petition did not pertain to her actual causing anything but that her paramour, and since her paramour was still living there, it was necessary to remove the children. She could have been charged with criminal endangerment of a child. It's pretty broad language in that statute. It is broad language. But she was never required by the Court to admit that she was an accomplice or that she had knowledge that the acts were taking place at the time. What the Court ordered her to do was obtain a psychological evaluation. And, and this is important, to cooperate with the treatment recommendations, which she did not cooperate with. But if the treatment recommendations include admission, that creates the same problem just later in the process, doesn't it? The problem with this is that she refused to acknowledge that the children had been the victim of any kind of domestic abuse. Not just the sexual abuse, but also the 2003 incident with the chains. The mother offered implausible explanations for the child's injuries. They're just outrageous. The first incident, the child had marks on her skin from being beaten with a metal chain or a metal belt. And the mother said, no, no, no, she fell on a Walmart cart. Falling on a Walmart cart was just not consistent with the injuries that showed up on the child's skin. They were chain marks. She said either the child injured herself vaginally or the dog did it by jumping on her. This is totally implausible because the child had, the medical evidence was totally inconsistent with what the mother was offering. And, and what the, her explanation that she was offering, what the, what the treatment was aimed at, was getting her to just begin to recognize, no, when you have this kind of physical evidence, your child has been abused. She couldn't even do that. She couldn't even start to do that. And for that reason, she made no progress whatsoever with her treatment. And it's, it's, it's, it's nothing that's, that's marginal. It wasn't inappropriate touching. We're talking about vaginal tears that had to be surgically repaired and with a lot of blood loss that was witnessed by the mother's sister who came over shortly after the attack. We're not talking about anything marginal. We're talking about this mother has the absolute inability to even recognize that her child has been injured purposely by another human being. I don't think there's anybody that, that abhors abuse more than all of us. All they have to do is offer immunity. They're not going to charge her with a crime. Right, no, well they didn't. She, as, as you point out, she didn't, she didn't assert her rights. She wasn't going to be charged with a crime. What she was being required to do was, as this court points out, participate in meaningful therapy. She wasn't being required to admit any crime. She wasn't required to admit any complicity. All she was required to do was recognize that the injuries her child had suffered were not accidental or self-inflicted and that the child was not lying. The child at first offered the same story. She was obviously coached to say the dog did it. But later on, in July she was saying the dog, in September she said that Murillo did it, that he hurt her. And what they, what they were trying, what, what they were aiming at was getting her to recognize and believe her child and to recognize that these, these injuries were not accidental or self-inflicted, but were inflicted intentionally by Murillo so that she could begin. And his mother had a whole history of not being able to understand what domestic abuse was. And that, that goes back into her own childhood. And what they were trying to get her to do was understand when her child, what abuse really is and to recognize it so that she could protect her child. That's all the court was requiring her to do, was to cooperate with the treatment recommendations. The court was not trying, she was never required to admit any criminal responsibility or admit any wrongdoing. So her Fifth Amendment rights were never implicated. All she was required to do was cooperate with treatment recommendations. So there, the court did, the court did nothing wrong. There was no, there was no Fifth Amendment implication here. What the court was trying to do was to get her to engage in meaningful therapy. And for that reason there, there was, the court did nothing constitutionally infamous about it. Throughout the whole course from the date the child, the children were adjudicated, neglected, abused, and from that point in April 2007, the mother persisted. And this, this, this, this persistence cuts across all the nine grounds that the, or six grounds that the court found. The mother persisted in saying that she knew Morello hadn't harmed her child and on either occasion. And she persisted in saying that if the child did say that Morello did it, that she was lying. And she persisted in saying that the dog did it, which was a totally implausible, ridiculous explanation for vaginal tears. She's, this cuts across all the grounds. The first ground was that, the first ground the court found was that she failed to show a reasonable degree of responsibility as a, to her children's mother. And this is, this is, the efforts don't have to be successful. They just have to be reasonable and failing to, failing to recognize and believe your own child who says, Morello did it to me. And when the medical evidence showed that it couldn't have happened by the ways that she was proffering, that's not reasonable. That's not a reasonable effort. That's not a reasonable degree of responsibility. But also, having, resuming a relationship with Morello under these circumstances is not, does not show a reasonable degree of responsibility to, as to her children's welfare. They, and for this reason, the grounds were supported as to both of the children on that ground. The court found also that she failed to make reasonable efforts to correct the conditions that caused the children's removal during the first nine months. The first nine months begins with the adjudication on April 23rd, 2007. This is a subjective standard. It's what is reasonable for this person. And even for this person, even for this mother, this court has to agree with the court below that it's not reasonable for her to fail to recognize that her child had been sexually abused and had been beaten by Morello, given the physical evidence of that abuse. And it's not reasonable for her to continue to say, during those first nine months, that the dog did it, or she did it to herself, or she's lying. It's simply, it's simply not reasonable. And so these grounds are also supported by the record and should be affirmed. The court also found that she failed to make reasonable progress toward the return of the children during the first nine months. And again, this standard, though, however, is an objective standard. And objectively, or subjectively, the mother's failure to recognize her children's abuse, given the physical evidence of it, is not reasonable progress during the first nine months. The same thing cuts through the additional grounds. There were three more nine-month periods that the court found a failure to make reasonable progress, and that's set out in the people's brief. But it cuts across the remaining nine-month periods. The mother simply never made any progress toward the children's return. Without recognizing what abuse is, you can't say that the court could say that they could return the children safely to her in the immediate future. That's not reasonable progress. For all those reasons, people ask the court to affirm. Thank you, counsel. Counsel? This case is a prevalent case, I'm sure, for all involved in it in this court. Here we have a father who's done everything on the service plan. He's done everything. The real question here on all four of these grounds, when you get right down to it, as we previously talked about, is can this mother be found unfit for failing to admit that her daughter was sexually abused? That's the bottom line. That was the court's findings on all four of the grounds. The threshold question, is this a Fifth Amendment case? If the court finds that it's not, then we go into the question of meaningful therapy. The lower court in this case should have said, or the caseworker or somebody should have said, okay, she continues to deny. Rather than render her unsatisfactory, we have to see if there's some sort of meaningful therapy that could be provided to this woman that she could complete. Now, maybe there's not, but there was no effort made by DCFS to do that. There was no order by the court to try and find that. She had to go out on her own and find her own counselor. There was no testimony at the unfitness portion of this by any professional or any person that there was an opportunity given to her of some therapy that would be meaningful in light of her refusal to admit the sexual abuse. To me, that is not clear and convincing evidence in this case of a situation where a mother who, according to the testimony of DCFS, did everything on the service plan, according to the judge, jumped through hoops, but failed to admit, and that's the reason she was rated unsatisfactory, failed to admit that which she denied, the sexual abuse, and because of that, her parental rights were terminated. Isn't another way of characterizing this, as opposed to failing to admit the sexual abuse, being unwilling to protect the child from Murillo or Martine or whatever his name is? That's probably the meaningful therapy that came in to see if that issue could have been addressed. Maybe it couldn't have been, but it wasn't provided to her. The opportunity wasn't provided. Wasn't the opportunity there, but it couldn't be meaningful because she refused to admit that this guy was a danger to her children? In AW and PMC, there's some question whether a sexual offender can be rehabilitated or meaningful therapy given to that person without admission, that the court didn't want to take judicial notice of whether that could or couldn't be done. I think here the court had to order some sort of therapy or direct DCFS to give her some sort of therapy in light of her denial, and they didn't. All they said is she's never going to get her kids back and she's going to get terminated unless she admits, and that's exactly what the court did, and that was exactly the court's ruling on the unfitness part of it, and if we think that's wrong, it should be reversed. Thank you. Thank you, counsel. We appreciate the briefs and arguments from counsel to take the case under advisement. Thank you.